IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION


MICHAEL PRESTON, Individually
and on Behalf of All Others
Similarly Situated,

                    Plaintiff,              Case No. 17 C 3549

          v.                                Judge Harry D. Leinenweber

AMERICAN HONDA MOTOR
COMPANY, INC.,

                    Defendant.


## MEMORANDUM OPINION AND ORDER

Plaintiff Michael Preston ("Preston") brings this putative class action against Defendant American Honda Motor Company, Inc. ("Honda") alleging breach of express warranty, breach of implied warranty, violation of the Magnusson-Moss Act, 15 U.S.C. § 2301 *et seq.*, and violation of the Illinois Consumer Fraud and Deceptive Business Practices Act, 815 Ill. Comp. Stat. 505/1 *et seq.* (the "ICFA"). Before the Court is Honda's Motion to Dismiss or, in the Alternative, to Transfer Venue [ECF No. 13]. For the reasons stated herein, the Court grants the Motion to Transfer.

# I.  BACKGROUND

*"What's my problem? First of all, I'm a rat.  Which means, life is hard.  Second, I have a highly developed sense of taste and smell."*  Remy, <u>Ratatouille</u>, Disney Pixar Films (2007).

## A.  Factual Allegations

On June 23, 2015, Preston leased a 2015 Honda Accord from an authorized Honda dealer in Illinois. (ECF No. 1 ("Compl.") ¶¶ 7, 30-31.) Written warranties accompanied the lease, including a three-year or 36,000-mile new vehicle limited warranty (the "NVLW").  The NVLW warrants that Honda "will repair or replace any part that is defective in material or workmanship under normal use." (*Id.* ¶¶ 9, 12.)  However, it does not cover "[n]ormal wear or deterioration of any part" or "acts of nature." (ECF No. 14 ("Def.'s Mem.") at Ex. 3.)

Around November 2016, Preston experienced a complete loss of power steering while operating his Accord.  (Compl. ¶¶ 13, 14.)  After taking the car to a Honda-authorized service center for diagnosis, "he discovered that the Accord's electrical wiring, which Honda had covered with soy-based material, had been chewed and/or eaten." (*Id.* ¶ 15.)  Despite the fact that neither three years nor 36,000 miles had elapsed, Honda refused to cover the repairs under the NVLW. (*Id.* ¶ 16.)  Instead, it

"simply re-installed more soy-based insulated wiring at Plaintiff's cost." (*Id.* ¶ 21; *see also, id.* ¶ 23.)

Preston contends that Honda deliberately chose to insulate the wiring in certain of its more recent model-year Accords with a biodegradable soy-based compound, instead of traditional insulation, despite knowing that the former is particularly appetizing to rodents and other critters. (Compl. ¶¶ 17-18.) By gnawing on the soy-based insulation, these rodents expose the underlying wiring and can allegedly induce vehicle malfunctions of the sort Preston experienced. (*Id.* ¶ 2.) The gravamen of Preston's suit is thus that Honda's manufacture of the Accords in question with soy-based wiring and subsequent failure to cover repairs violates state and federal warranty law. (*Id.* ¶¶ 23-26.) Suing on behalf of a class of similarly situated Illinois residents, Preston also alleges that Honda's conduct amounts to a violation of the ICFA.

## B. Earlier-Filed Cases

Preston is not the first plaintiff to challenge Honda's use of soy-based insulation in its vehicles' electrical wiring. In *Dobbs v. American Honda Motor Co.,* No. 16 C 456 (C.D. Cal. dismissed June 2, 2016), the plaintiffs were lessees of 2012-15 model year Honda vehicles manufactured with electrical wiring coated with soy-based insulation. They alleged that this

material attracts rodents and other animals who chew through the insulation and electrical wires, challenging Honda's decision to refuse to cover the required repairs as a violation of the state consumer protection statutes of the named plaintiffs' respective states, breach of Honda's express warranty, breach of the implied warranty of merchantability, and violation of the federal Magnusson-Moss Warranty Act. However, the plaintiffs voluntarily dismissed their claims without prejudice despite having fully briefed Honda's motion to dismiss before the presiding judge, Judge Manuel Real. (*See,* ECF No. 23 ("Def.'s Reply") at Ex. 4.)

Similarly, in *McKown v. American Honda Motor Co.,* No. 17 C 204 (C.D. Cal. dismissed July 11, 2017), the plaintiffs alleged that two pre-owned Accords, which they had purchased in 2016 from Kansas dealerships, "were rendered inoperable due to rodents chewing through wiring in the fuel lines and the transmission harness." *Id.,* ECF No. 47, slip op. at 2. Honda told the plaintiffs that the damage was not covered under warranty and charged them for the repairs. *Ibid.* The plaintiffs brought claims, *inter alia,* for violation of the Magnusson-Moss Warranty Act, breach of implied and express warranty under California and Kansas state law, and violation of California and Kansas consumer protection law. Just prior to (and indeed on

the same day as) Judge Real's July 11, 2017 order dismissing these claims for failure to give Honda fair notice, the *McKown* plaintiffs filed a notice of voluntary dismissal. (*See,* Def.'s Reply at Ex. 2.)

## II. <u>DISCUSSION</u>

Honda moves to dismiss Preston's Complaint for failure to state a claim or, in the alternative, to transfer the case to the Central District of California. The Court need not test the legal sufficiency of Preston's Complaint because it finds the case suitable for transfer to a court that is familiar with the facts and law underlying this case, and thus better situated to decide Honda's Motion to Dismiss.

Section 1404(a) provides for transfer of "any civil action to any other district or division where it might have been brought" for "the convenience of parties and witnesses, and in the interest of justice." 28 U.S.C. § 1404(a). The decision to transfer venue is a discretionary one, requiring the Court to exercise "a large degree of subtlety and latitude" in balancing a number of factors for and against transfer. *Coffey v. Van Dorn Iron Works,* 796 F.2d 217, 219 (7th Cir. 1986); *see also, Research Automation, Inc. v. Schrader-Bridgeport Int'l, Inc.,* 626 F.3d 973, 977-78 (7th Cir. 2010). The moving party bears

the burden of demonstrating that the transferee district is "clearly more convenient." *Coffey,* 796 F.2d at 219-20.

To transfer an action to another venue, the district court must find that: (1) venue is proper in the district where the case was brought; (2) venue and jurisdiction are proper in the transferee district; (3) the transferee district is more convenient for both the parties and witnesses; and (4) transfer would serve the interest of justice. *Rosen v. Spirit Airlines,* 152 F.Supp.3d 1055, 1059 (N.D. Ill. 2015) (citation omitted); *see also, Research Automation,* 626 F.3d at 977-78.

Neither party disputes the propriety of venue in this District. (*See, e.g.,* Compl. ¶ 4-6; Def.'s Mem. at 11.) With respect to the second factor, jurisdiction and venue are proper in the Central District of California. Honda's headquarters and principal place of business are in Torrance, California (*see,* ECF No. 15 ("Oborny Decl.") ¶¶ 2-8), which is situated within the Western Division of the Central District of California. *See,* Jurisdiction Map for the Central District of California, *available at* https://www.cacd.uscourts.gov/jurisdiction (last visited Oct. 13, 2017). Ergo, Honda is subject to personal jurisdiction there. Accepting Preston's allegations as true yields the conclusion that that District would also have subject matter jurisdiction under the Class Action Fairness Act, 28

U.S.C. § 1332(d)(2). (*See,* Compl. ¶ 4.) Venue is similarly proper in that District because, as recited throughout Preston's Complaint, a substantial part of the events and omissions giving rise to his claims occurred at Honda's headquarters. 28 U.S.C. § 1391(b). Satisfied with the first two venue transfer conditions, the Court proceeds to balance the various factors governing convenience of the parties and witnesses as well as the interest of justice.

## A. Convenience of the Parties and Witnesses

Evaluating the convenience of one venue over another involves consideration of four factors: (1) the plaintiff's choice of forum; (2) the situs of material events; (3) the relative ease of access to sources of proof; and (4) the convenience of the parties and witnesses. *Research Automation,* 626 F.3d at 978. The Court takes each of these in turn and concludes, after considering them all, that they collectively favor transfer of this case to the Central District of California. *See, Coffey,* 796 F.2d at 219-20.

### 1. Preston's Choice of Forum

A plaintiff's choice of forum is typically given substantial weight, especially when that forum is the plaintiff's home forum. *See, e.g., In re Nat'l Presto Indus., Inc.,* 347 F.3d 662, 664 (7th Cir. 2003). That choice, however,

is given less deference "when another forum has a stronger relationship to the dispute." *Amorose v. C.H. Robinson Worldwide, Inc.,* 521 F.Supp.2d 731, 735 (N.D. Ill. 2007). Generally, when the conduct and events giving rise to a cause of action did not take place in the plaintiff's selected forum, the plaintiff's choice of forum has minimal value. *See, Chukwu v. Air France,* 218 F.Supp.2d 979, 989 (N.D. Ill. 2002).

Such is the case here, where the only nexus between Preston's claims and the Northern District of Illinois concerns his (and the other putative class members') residence in Illinois and the availability of the subject Honda Accords to Illinois purchasers. *See, e.g., Jaramillo v. DineEquity, Inc.,* 664 F.Supp.2d 908, 914 (N.D. Ill. 2009) ("In this case, the only relations to the Northern District of Illinois are that the named Plaintiffs reside in Illinois and the Applebee's WeightWatchers menu items are available in Illinois. On the other hand, Applebee's is headquartered in Kansas. Because Applebee's actions will be the subject of this case and their WeightWatchers menu items are available across the country, the District of Kansas has a stronger connection to the dispute than does the Northern District of Illinois."). Preston does not challenge conduct of Honda that is in any way particularized to Illinois but instead its indiscriminate manufacturing and

warranty decisions, which affect all purchasers and lessors of the identified Accords.  *See, Rosen,* 152 F.Supp.3d at 1059-60 ("[T]he dispute here focuses on the corporate decisions made by Defendant in its headquarters in the Southern District of Florida. . . .").

Absent something more than the incidental Illinois residencies of Preston and other putative class members, his choice of forum is accorded less deference.  As such, although the first convenience factor favors maintenance of the action in the Northern District of Illinois, it does so only marginally.

### 2.  *Situs of the Material Events*

Honda argues that all material events giving rise to Preston's claims occurred in California, where Honda is headquartered, has its principal place of business, houses the engineers who monitor and identify potential quality issues, maintains its warranty and marketing departments, and handles inquiries from U.S. customers relating to product and warranty questions. (Oborny Decl. ¶¶ 2-8.)  Preston, on the other hand, urges that the situs of material events is where the purchase(s) and wiring damage occurred – that is, in Illinois.

When the design or manufacture of a product is at issue, the situs of material events is where the product was produced, not where the plaintiff(s) made purchases.  *See, Orthoflex, Inc.*

*v. Thermotek, Inc.,* No. 10 C 1875, 2010 WL 5069700, at *3 (collecting cases). What is more, the situs of material events in a breach of contract case – and a claim for breach of express warranty is a contract claim - is the location "where the business decisions causing the breach occurred." *First Nat'l Bank v. El Camino Resources, Ltd.,* 447 F.Supp.2d 902, 912 (N.D. Ill. 2006) (internal quotation marks omitted). Similarly, where a claim revolves around large-scale misrepresentations or statements to consumers, the situs of material events is where the defendant made the underlying business decisions. *See, Jaramillo,* 664 F.Supp.2d at 914 ("The material events in this case concern the conduct of Defendants. The conduct which is the focus of this suit is decisions by Defendants to market and sell Applebee's WeightWatchers Menu items with allegedly misrepresented nutritional information, not the purchases by Plaintiffs. The relevant decisions would have been made by employees of the Defendants at a headquarters office. . . ."); *see also, Rosen,* 152 F.Supp.3d at 1060 ("[T]he material events are not where customers made their purchases. . . ."). As such, this factor favors transfer.

### 3. *Relative Ease of Access to Sources of Proof*

Honda argues that, to the extent not otherwise stored offsite, documents regarding its warranty, customer service,

manufacturing, and marketing decisions are located at its headquarters in Torrance, California. Preston does not dispute the location of this information but instead argues that, given advances in technology, the majority of discovery will be in the form of documents equally accessible in either the Central District of California or the Northern District of Illinois.

The location of records typically has little impact on the transfer analysis unless they are extraordinarily voluminous or otherwise difficult to ship. *See, e.g., AL & PO Corp. v. Am. Healthcare Capital, Inc.,* No. 14 C 1905, 2015 WL 738694, at *3 (N.D. Ill. Feb. 19, 2015) (collecting cases). Although it is likely that discovery will be more onerous for Honda than for Preston (and the other putative plaintiffs), Honda has not shown that there is a material difference in producing these documents in this District or in the Central District of California. Where, as here, "documents are easily transferable, access to proof is a neutral factor." *Handler v. Kenneth Allen & Assocs., P.C.,* No. 10 C 3728, 2011 WL 1118499, at *3 (N.D. Ill. Mar. 24, 2011) (citation omitted). Accordingly, the ease of access to proof is essentially a neutral venue factor.

### *4. Convenience of the Parties*

Each party contends that it will be inconvenienced by the case proceeding outside their preferred venue. Neither makes

any argument or furnishes information concerning anticipated discovery, evidentiary stipulations, deposition procedures, or the like. The competing burdens on the parties, combined with principles from case law that cut in opposite directions here, make this factor a neutral one in the venue transfer calculus.

Deciding this factor requires the Court to determine the parties' "respective residences and abilities to bear the expense of trial in a particular forum." *Von Holdt v. Husky Inj. Molding Sys., Ltd.,* 887 F.Supp. 185, 188 (N.D. Ill. 1995). The Seventh Circuit regards convenience concerns based purely on travel as attenuated in the modern age. *See, In re Hudson,* 710 F.3d 716, 719 (7th Cir. 2013) ("In our age of advanced electronic communication, including high-quality video-conferencing, changes of venue motivated by concerns with travel inconvenience should be fewer than in the past."). Also germane is the principle that "[t]ransfer is inappropriate if it merely transforms an inconvenience for one party into an inconvenience for the other party." *Brandon Apparel Group, Inc. v. Quitman Mfg. Co. Inc.,* 42 F.Supp.2d 821, 834 (N.D. Ill. 1999). "When plaintiff and defendant are in different states there is no choice of forum that will avoid imposing inconvenience," meaning that "the tie is awarded to the plaintiff" if the inconvenience is comparable. *In re Nat'l Presto,* 347 F.3d at 665. The

question, then, is whether the party inconvenience is comparable.

The Court finds that it is more inconvenient for Honda to litigate this case in the Northern District of Illinois than it is for Preston (and putative class members) to litigate this case in the Central District of California. "One consideration in the convenience of the parties analysis is the cost that parties must incur in making their employees available for deposition and trial." *Orthoflex,* 2010 WL 5069700 at *4; *see also, AL & PO,* 2015 WL 738694, at *3 ("AHC claims that it is a small business that would suffer substantial losses in productivity if its key management employees were required to travel to Illinois to testify. AL & PO likewise asserts that, as a small company, it would similarly suffer due to travel to California. . . . As between AL & PO and AHC, the court concludes that the inconvenience of having employees travel is comparable."). Neither Preston nor other individuals who join the action will need to produce employees for deposition or make them available for trial, whereas Honda will at least have to offer a Rule 30(b)(6) deponent along with potential additional witnesses from the company with knowledge of Honda's warranty and manufacturing decisions. "Securing the attendance of the multiple [Honda] employees each having specific knowledge

concerning the design, manufacture, or repair" of the subject Accords "comes at great cost to [Honda] should the proceedings remain in this district." *Orthoflex,* 2010 WL 5069700, at *4.

However, because Honda "is a large corporation, and not an individual like the Plaintiff, [it] is in a much better position to bear the relative inconvenience." *De Falco v. Vibram USA, Inc.,* No. 12 C 7238, 2013 WL 1122825, at *10 n.9 (N.D. Ill. Mar. 18, 2013). Thus, while Preston is not entitled to the benefit of the "tie" because of Honda's incomparable burden to produce employees during discovery and make other witnesses available for trial, Honda is capable of shouldering this burden. Accordingly, the party convenience factor – to the extent it cuts in either direction – only minimally favors transfer.

### 5. The Convenience of Witnesses

Finally, Honda argues that the convenience of witnesses favors transferring the case to the Central District of California. The convenience of non-party witnesses is the most important element under this venue transfer factor, since party witnesses "normally must appear" as part of their employment. *Amorose,* 521 F.Supp.2d at 736. (Indeed, the Court separately analyzed the convenience of party witnesses above.) Honda maintains that it may need to call non-party witnesses, such as

suppliers of components, to defend against Preston's allegations regarding the soy-based wiring insulation. On the other hand, Preston argues that his non-party witnesses are based in Illinois: the Honda dealership personnel who leased him the Accord, the mechanic at the repair facility who identified the chewed wires, and a representative from his insurance company. Preston counters Honda's argument for transfer by comparing his stated need to call at least three non-party witnesses with Honda's terse statement that it may call unspecified third-party component suppliers.

However, what matters is not only the number of witnesses located in each forum but also the nature and importance of their testimony. *See, e.g., Aldridge v. Forest River, Inc.,* 436 F.Supp.2d 959, 961-62 (N.D. Ill. 2006). Courts are tasked with a rigorous review of the potential relevance of witnesses, and duplicative testimony is discounted. *See, AL & PO,* 2015 WL 738694, at *4. The importance of testimony from the individual at the dealership who leased Preston his Accord seems minimal in this warranty and consumer fraud action against Honda based on its NVLW. Similarly, it is unclear why a representative of Preston's insurer would be required to testify; the only tertiary mention of insurance in the Complaint concerns Honda's alleged statement that Preston would need to pay out of pocket

or file an insurance claim. (*See,* Compl. ¶ 23.) Honda does not contest Preston's allegation that it refuses to cover the damage at issue under the NVLW, and indeed Honda argues in its motion papers that the alleged rodent damage falls under the "act of nature" carve-out from the NVLW. (*See,* Def.'s Mem. at 9-10.) As it pertains to this action, testimony from insurance personnel would only duplicate Preston's own affirmations that he either paid out of pocket or submitted an insurance claim. Because neither a dealership salesperson nor an insurance representative would contribute important testimony about Honda's implementation of soy-based wiring insulation and refusal to cover rodent-caused decay, the only non-party witness Preston has identified with potentially significant testimony is the mechanic who diagnosed his Accord's wiring with rodent damage.

However, testimony from Honda's third-party component suppliers would prove relevant to Preston's allegation that Honda knew of the shortcomings associated with soy-based insulation and that its use on the vehicles in question was a manufacturing defect. Such evidence would not duplicate any other proposed testimony. Although Honda has not identified a specific third-party supplier, this is likely a function of the pre-discovery posture of this case and the fact that, other than alleging a malfunction of his Accord's power steering, Preston

has not yet specified what wiring or parts are at issue.  In the best case scenario for Preston, this factor weighs neutrally in the venue transfer balance.

*    *    *

In sum, of the five convenience factors, Preston's choice of forum weighs slightly in favor of maintaining the action in the Northern District of Illinois, whereas the situs of material events favors transferring the case to the Central District of California.  Honda also bears a greater party inconvenience, although the import of this factor is slim in light of the company's resources.  The other three factors do not clearly favor either party.  As such, the balance of the convenience tips faintly in favor of transfer.

## B.  The Interest of Justice

In support of its Motion to Transfer, Honda urges that the interest of justice favors transferring the case to the Central District of California.  Preston does not respond to any of Honda's arguments on this score.

A decision to transfer venue under Section 1404(a) relies heavily on consideration of the interest of justice, which "may be determinative in a particular case, even if the convenience of the parties and witnesses might call for a different result." *Coffey,* 796 F.2d at 220; *accord, Research Automation,* 626 F.3d

at 978.  In determining which venue is more likely to effectuate swift administration of justice, the Court does not consider the merits of the underlying claim but rather the public's interest in conserving scarce judicial resources by "efficient administration of the court system." *Coffey,* 796 F.2d at 220-21.  Controlling factors include (1) ensuring a speedy trial, (2) trying related litigation together, (3) the relationship of communities to the litigation, and (4) having the trial before a judge who is familiar with the applicable law. *Research Automation,* 626 F.3d at 978; *see also, Heller Fin, Inc. v. Midwhey Powder Co.,* 883 F.2d 1286, 1293 (7th Cir. 1989).

### 1. Ensuring a Speedy Trial

To evaluate the speed at which a case will proceed, courts look to two statistics:  "(1) the median number of months from filing to disposition for civil cases and (2) the median number of months from filing to trial for civil cases." *Juarez v. Nat'l Ry. Passenger Corp.,* No. 06 C 3681, 2007 WL 2713357, at *3-4 (N.D. Ill. Sept. 12, 2007) (citations omitted).  According to the Federal Court Management Statistics for the annual period ending June 30, 2017, the median time from filing to disposition and from filing to trial in civil cases was 4.8 months and 20.0 months, respectively, in the Central District of California. For the Northern District of Illinois, however, these numbers

were 8.2 months and 40.0 months.  *See,* http://www.uscourts.gov/
sites/default/files/data_tables/fcms_na_distprofile0630.2017.pdf
(last visited Oct. 12, 2017).  Accordingly, it takes almost 75
percent as long for cases to proceed from filing to disposition
and twice as long for cases to proceed from filing to trial in
the Northern District of Illinois than in the Central District
of California.  At bottom, the latter District has a much better
track record of speeding cases along from filing to disposition
and from filing to trial, such that this interest-of-justice
factor counsels in favor of transferring the case.

### 2.  *Trying Related Litigation Together*

Pointing to the *Dobbs* and *McKown* class actions brought in
the Central District of California, Honda argues that the second
interest-of-justice factor favors transfer as well.  Honda
contends that the voluntary dismissals of those actions after
written discovery had been tendered and motions to dismiss fully
briefed – and, in *McKown,* after Honda filed the instant motion
in this case – raise a strong suspicion of forum shopping.

Part and parcel of determining the interest of justice is
considering the level of familiarity of the transferor and
transferee courts with the facts and circumstances surrounding
the controversy.  Section 1404(a) "was designed to prevent the
situation in which two cases involving precisely the same issues

are simultaneously pending in different District Courts." *Aland v. Kempthorne,* No. 07 C 4358, 2007 WL 4365340, at *5 (N.D. Ill. Dec. 11, 2007). Where it would be "wasteful and duplicative to have two different courts familiarize themselves with the controversy," this interest-of-justice factor favors transfer. *Jaramillo,* 664 F.Supp.2d at 916. In determining whether a claim is duplicative, it is "the substance of a claim" (and not its form) that controls. *Id.* at 916 (citation omitted); *see also, Serlin v. Arthur Andersen & Co.,* 3 F.3d 221, 223 (7th Cir. 1993). Though the claims may be based on different underlying law, they may nonetheless be substantially similar if they are "based on the same underlying facts." *Jaramillo,* 664 F.Supp.2d at 916.

The *Dobbs* and *McKown* class actions in the Central District of California implicated facts identical to those backstopping Preston's claims in this case. What is more, in both *Dobbs* and *McKown,* the plaintiffs brought warranty claims and consumer-fraud claims under the laws of states other than California. These stark parallels suffice to characterize the instant lawsuit as duplicative; full identity of the claims is not required. *See, e.g., De Falco,* 2013 WL 1122825, at *11 ("The claims in the instant case allege violations of the ICFA as well as a breach of warranty claim. The claims in the Massachusetts

action allege violations of the Massachusetts and Florida consumer fraud statutes. While the claims are based on different underlying law, they are substantially similar because they have the same underlying facts."). Similarly, that Preston's putative class action is composed only of Illinois residents does not make it less duplicative of the earlier-filed nationwide California class actions. *See, ibid.* (finding claims asserted on behalf of Illinois consumers duplicative of claims asserted by plaintiff in earlier nationwide class action relating to same products). Prior to their voluntary dismissal, both cases engendered more docket entries (37 and 47, respectively) than the 24 entries currently comprising the docket in this case. (*See,* Def.'s Reply at Exs. 2 & 4.) In *McKown,* the parties even presented a Rule 26(f) discovery plan to the court. Thus, not only is this case duplicative of the California class actions, but judicial economy counsels in favor of relying on Judge Real's greater familiarity with the factual and discovery issues implicated by Preston's claims.

The Court therefore follows "the apparent trend among Courts in this District," which "is to grant transfer motions under the key geographic factors present here: the defendant is located in the transferee district, two similar class actions are pending in different federal districts and one of the class

actions is pending in the transferee district." *Rosen*, 152
F.Supp.3d at 1063.  That the plaintiffs in both California class
actions have now voluntarily dismissed their cases without
prejudice does not compel a different result, particularly as
the dismissal in *McKown* post-dated the filing of Honda's Motion
to Transfer in this case.  *See, e.g., Wireless Consumers All.,
Inc. v. T-Mobile USA, Inc.,* No. 03 C 3711, 2003 WL 22387598, at
*4-6 (N.D. Cal. Oct. 14, 2003) (transferring duplicative action,
notwithstanding that original action was no longer pending,
where Central District of California Local Rule 83-1.2.2 ensured
that same judge who presided over original action would receive
duplicative action).  In any event, both actions were
voluntarily dismissed without prejudice, meaning that they may
well be reinstituted within the life cycle of this litigation.

Consequently, this factor favors transfer because of the
recent related litigation Judge Real has handled in the Central
District of California.

### 3. The Relationship of Communities to the Litigation

This factor is often given a great deal of weight.  *See,
e.g., Amoco Oil Co. v. Mobil Oil Corp.,* 90 F.Supp.2d 958, 962
(N.D. Ill. 2000).  Courts determining which way this factor cuts
tend to focus on both the situs of material events and the
respective interests of the transferor and transferee forum in

the case.   First, the Court reiterates that the situs of material events in this case is California.   (*See,* Section II.A.2, *supra.*)   As such, the first prong of this venue factor weighs in favor of transfer.   *See, e.g., AL & PO Corp.,* 2015 WL 738694, at *5 (treating situs of material events as determinative of and coextensive with relationship of community to occurrences at issue).

With respect to the second prong, Illinois courts do not have a superior interest in this dispute.   For its part, California has a powerful stake in adjudicating the business practices of companies headquartered within its borders.   On the other hand, however, Illinois has an interest in protecting its residents from injuries in the marketplace.   But because Honda sells the subject Accords under the same NVLW nationwide, the interest of Illinois courts in this dispute is no greater than the interest any other state's courts would have in the face of analogous litigation.   *See, Colida v. Kyocera Wireless Corp.,* No. 02 C 7348, 2003 WL 1741396, at *3 (N.D. Ill. Apr. 1, 2003)(finding that defendant's home forum had stronger relationship to action, even when torts were committed in both the transferor and transferee forum); *see also, Orthoflex,* 2010 WL 5069700, at *5 ("Both venues have an interest in this action. Illinois has an interest in adjudicating injuries that occur in

this state and in ensuring that products introduced into the stream of commerce in Illinois are not harmful to its residents. Similarly, Texas has an interest in ensuring that Texas manufacturing companies are not producing defective products. Thus, this factor neither weighs in favor of transfer nor retention.").

Because California is the situs of material events and Illinois has no greater interest than California in adjudicating this litigation, this factor also favors transfer of the case.

### 4. *Familiarity with Applicable Law*

The applicable law in this case is the federal Magnusson-Moss Act as well as Illinois statutory and warranty law. Both courts have equal expertise in adjudicating the federal warranty claims. While Illinois courts may enjoy a comparative advantage in deciding Preston's ICFA and implied warranty claims, federal courts "are accustomed to applying the laws of other states." *Miller v. SKF USA, Inc.,* No. 10 C 6191, 2010 WL 5463809, at *3 (N.D. Ill. Dec. 29, 2010); *see also, Jaramillo,* 664 F.Supp.2d at 917 ("The Northern District of Illinois is undoubtedly more familiar with the application of Illinois law, but federal courts have experience applying the law of foreign states."). Worth remembering is that, in the *Dobbs* and *McKown* class actions, the plaintiffs brought before Judge Real implied

warranty and consumer protection claims under the laws of the various plaintiffs' states. Thus, to the extent this factor favors maintenance of the case in the Northern District of Illinois, it does so only slightly.

*        *        *

Thus, the interest of justice clearly favors transferring this case to the Central District of California. That District can more speedily resolve the dispute; Judge Real is vastly more familiar with the facts of this case than is this Court, and applicable local rules indicate that he would be assigned the case post-transfer; California has at least as compelling an interest as Illinois in adjudicating this litigation; and the factor concerning familiarity with applicable law – to the extent it does not weigh neutrally – only marginally favors maintenance of the case in the Northern District of Illinois.

In sum, because the convenience of the parties marginally favors transfer and the interest of justice significantly does, the balance of all the venue transfer factors "is strongly in favor of the defendant." *In re Nat'l Presto,* 347 F.3d at 664. The case will be transferred to the Central District of California with the expectation that, pursuant to its Local Rule 83-1.2.2, Judge Real will be assigned the case.

### III.  <u>CONCLUSION</u>

For the reasons stated herein, Defendant Honda's Motion to Transfer is granted and its Motion to Dismiss is denied as moot [ECF No. 13].


**IT IS SO ORDERED.**

_____
Harry D. Leinenweber, Judge
United States District Court

Dated: November 2, 2017