ATTORNEYS FOR PLAINTIFF:
Stephanie R. Tatar (237792)
Tatar Law Firm, APC
3500 West Olive Avenue, Suite 300
Burbank, California 91505
Tel: (323) 744-1146
Fax: (888) 778-5695
E-mail: stephanie@thetatarlawfirm.com

Larry P. Smith (*pro hac vice* pending) (IL Bar Number 6217162)
SmithMarco, P.C.
55 West Monroe St., Suite 1200
Chicago, IL 60603
Tel: (312) 324-3532
Fax: (888) 418-1277
E-Mail: lsmith@smithmarco.com

Stacy M. Bardo (*pro hac vice* pending) (IL Bar Number 6271913)
Bardo Law, P.C.
22 West Washington St., Suite 1500
Chicago, IL 60602
Tel: (312) 219-6980
Fax: (312) 219-6981
E-mail: stacy@bardolawpc.com

## UNITED STATES DISTRICT COURT
## CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| MICHAEL PRESTON and PENELOPE TURGEON, individually and on behalf of all others similarly situated,<br><br>Plaintiffs,<br><br>v.<br><br>AMERICAN HONDA MOTOR COMPANY, INC.,<br>Defendant. | Case No. 2:18-cv-00038-R-JC<br><br>**FIRST AMENDED COMPLAINT (CLASS ACTION)**<br>Hon. Judge Manuel L. Real<br><br>Complaint Filed in N.D. Ill: May 11, 2017<br><br>Complaint Transferred from N. D. Ill.: December 29, 2017 |

1

FIRST AMENDED COMPLAINT (CLASS ACTION)

## PREFATORY ALLEGATIONS AND PROCEDURAL HISTORY

1. Plaintiffs Michael Preston and Penelope Turgeon, both residents of the State of Illinois, bring this matter on behalf of a proposed class of similarly situated Illinois consumers against Defendant American Honda Motor Company, Inc. ("Honda").

2. This matter was originally filed in the Northern District of Illinois (N.D. Ill. Case No. 17-cv-03549) as all Plaintiffs and proposed class members reside in or purchased vehicles in the State of Illinois.  On June 16, 2017, as its initial response to the N.D. Ill. Complaint, Honda moved to dismiss or to transfer the proceeding to the Central District of California (C.D. Cal.), citing two cases involving Honda's soy vehicle components already pending in this Honorable Court.  Plaintiff objected to the transfer given the voluntary dismissal of both cases previously filed here and the extreme inconvenience associated with litigating an Illinois-only case in California.  On or about December 29, 2017, over Plaintiff's objection and his motion to reconsider the transfer, the matter was transferred here and on January 4, 2018, the C.D. Cal. Clerk's Office received the original file and assigned the case.  *See* Doc. 36.

3. Plaintiffs seek relief for themselves and the proposed class under the Illinois Consumer Fraud Act, 815 ILCS 505/1 *et seq*. ("ICFA"), which prohibits affirmative misrepresentations, omissions of material fact, and other generally unfair or deceptive business practices.

4. As alleged herein, Honda's failure to advise vehicle purchasers prior to purchase that Honda's new vehicle warranty will not cover any vehicle malfunction caused by a rodent chewing incident -- when Honda knew that a change in materials being used has caused rodents to repeatedly chew through wires -- is an omission of material fact.

2

FIRST AMENDED COMPLAINT (CLASS ACTION)

5.   In fact, while Honda refuses to cover rodent-related repairs under its manufacturer's warranty, its authorized repair centers market and sell Honda rodent-deterrent tape ("Honda 4019-2317 Rodent Tape") and charge Honda vehicle purchasers to apply the tape to the wiring and or wire harnesses as part of the repair.

6.   Wiring insulation and/or wire and wire harness protective coating, tubing or housing, is imperative to the integrity of a vehicle's electrical system. While soy and/or bio-based material is allegedly more environmentally friendly, and has been used with increasing frequency, when the vehicles are placed in the stream of commerce and then purchased by consumers, the use of soy and/or bio-based material has led to an increase in the number of consumer complaints involving rodent attacks.  Ultimately, the wires are chewed through and, in the case of both Plaintiffs, their vehicles lost power steering as a direct result.

7.   When Honda vehicles are brought in for repair after rodent incidents, Honda authorized service centers often apply Honda 4019-2317 Rodent Tape.

8.   Honda claims this tape is the solution, made with a blend of spicy flavorings that purport to deter rodents, thereby admitting that vehicle wires and tubing need to be covered with after-market tape to prevent further costly out-of-warranty repairs, and further admitting that the current design has attracted rodents in the first place.

9.   However, despite acknowledging the rodent problem, selling an after-market product designed to deter rodents at additional profit, and telling consumers they should apply what amounts to fancy, flavored duct tape to vehicle wiring, Honda disclaims all liability for vehicle repairs and replacement parts needed after rodent incidents.

10.   Honda forces consumers to go out-of-pocket, make insurance claims or pay for rental vehicles while their Honda vehicles are in the shop.

11. Honda knows about the problem, asks consumers to pay for the problem, and continues to distribute vehicles without addressing the problem or alerting consumers to their vehicles' vulnerability, all of which amounts to unfair and deceptive conduct, prohibited by Section 2 of the ICFA.

## PARTIES AND ILLINOIS CLASS DEFINITION

12. Plaintiff Michael Preston is an Illinois consumer, residing in Lake County, Illinois.

13. Plaintiff Penelope Turgeon is an Illinois consumer, residing in Cook County, Illinois.

14. The Plaintiffs' proposed class is defined as all persons in the State of Illinois who, (a) between May 2014 and May 2017, (b) purchased or leased a new Honda branded vehicle at a Honda authorized dealership in Illinois and not for purposes of resale, (c) which Honda vehicle experienced a power steering malfunction attributed to rodent damage during the applicable new vehicle warranty period, and (d) Honda denied warranty coverage for the vehicle's service, repairs, and/or replacement parts.

15. Defendant American Honda Motor Company, Inc. is a foreign corporation engaged in the manufacture, sale, supply and distribution of motor vehicles and related equipment and services. Defendant supplies its products and services to the public through a system of authorized dealerships and service centers.

## GENERAL FACTUAL ALLEGATIONS

### Michael Preston

16. On or about June 23, 2015, Plaintiff Michael Preston leased a 2015 Honda Accord at Muller Honda in Highland Park, Illinois.

17. Preston's 2015 Honda Accord was manufactured and supplied by Honda with VIN 1HGCR2F80FA203311, for an agreed upon value of $25,381.28, inclusive of all collateral charges.

18.	In November of 2016, well within the 3-year/36,000 mile Honda new vehicle warranty period, Preston's Accord lost power steering.

19.	Preston's Accord was brought back to Muller Honda for service.

20.	On or about November 8, 2016, Muller Honda provided Preston with a repair invoice totaling $2146.16.  Muller Honda advised Preston that his Accord's wiring had been chewed through by a rodent and therefore, the electronic power steering and power steering rack had to be replaced:

```
GM: GENERAL MAINTANCE                                              AMOUNT
ELECTRONIC POWER STEERING INDICATOR WENT ON AND
LOST POWER STEERING
Work performed by Joe Aguilar           (202)
Installed 53601-T2F-A04 :RACK, POWER STEERING        1@1029.41    1019.32
Installed 53447-S5A-003 :BAND C, BELLOWS                          1029.41
Installed 53536-SJK-003 :WASHER, TIE ROD LOCK        2@3.07          6.14
REPLACED EPS, INITIALIZED SYSTEM AND DID ALIGNMENT   2@3.91          7.82
    Sub Total: 2062.69
```

21.	Because Honda did not cover the repairs under warranty, Preston was advised by Honda representatives to made an insurance claim, which Preston did, forcing him to incur a $500.00 deductible.

### Penelope Turgeon

22.	On or about May 10, 2017, Plaintiff Penelope Turgeon leased a 2017 Honda Civic Hatchback at Fletcher Jones Honda in Berwyn, Illinois.

23.	Turgeon's 2017 Honda Civic Hatchback was manufactured and supplied by Honda with VIN SHHFK7H23HU221574, for an agreed upon price of $19,127.

24.	In July of 2017, well within the 3-year/36,000 mile Honda new vehicle warranty period and only two months after bringing her new vehicle home, Turgeon's Civic lost power steering.

25.	Turgeon's Civic was brought to back to Fletcher Jones Honda for service.

26. On or about July 14, 2017, Fletcher Jones Honda informed Turgeon there was major damage to the Civic's electronic power steering harness, caused by bare wires that had been chewed through by a rodent, as depicted below:



27. Fletcher Jones Honda informed Turgeon the repairs were not covered under warranty and presented her with an invoice totaling $313.28. Fletcher Jones covered the replaced wiring with rodent tape and replaced the power steering sub harness:

```
16 REPLACED EPS SUB HARNESS
2017 CP 232.50 232.50
1 53682-TBA-A01 HARNESS 30.07 30.07 30.07
1 53680-TBA-A00 HARNESS, EPS 17.62 17.62 17.62
PARTS: 47.69 LABOR: 232.50 OTHER: 0.00 TOTAL LINE A: 280.19
```

28. Turgeon paid for the repairs and took her vehicle home.

6

FIRST AMENDED COMPLAINT (CLASS ACTION)

29. Less than 2 weeks later, on or about July 24, 2017, Turgeon experienced another total loss of power steering.

30. The vehicle was towed back to Fletcher Jones and the service center discovered the wires were re-exposed, and the EPS sub harness needed to be replaced for a second time, as depicted below:



31. The repair invoice stated:

```
7371AV REPLACED ELECTRIC POWER SUB HARNESS
363    CP                                                      232.50      232.50
1 53682-TBA-A01 HARNESS                                          30.07       30.07
30.07
1 4019-2317 TAPE,RODENT 19MM 20M                                 46.31       46.31
46.31
PARTS:       76.38   LABOR:      232.50   OTHER:       0.00    TOTAL LINE A:
308.88
1278 FOUND POWER STEERING GEAR BOX WIRE HARNESS DAMAGED BY RODENTS.
```

FIRST AMENDED COMPLAINT (CLASS ACTION)

7

```
1.50 WRAP NEW WIRE HARNESS WITH RODENTS RESISTANCE TAPE AND INSTALLED
ON THE GEAR BOX
```

32. Turgeon had to pay another $163.87 (after insurance covered the remaining portion), including $46.31 for Fletcher Jones to apply more Honda 4019-2317 Rodent Tape.

## CLASS ALLEGATIONS

33. Plaintiffs bring this action individually and on behalf of an Illinois class of similarly situated individuals pursuant to Rule 23 of the Federal Rules of Civil Procedure.

34. As alleged above, the class is defined as all persons in the State of Illinois who, (a) between May 2014 and May 2017, (b) purchased or leased a new Honda branded vehicle at a Honda authorized dealership in Illinois and not for purposes of resale, (c) which Honda vehicle experienced a power steering malfunction attributed to rodent damage during the applicable new vehicle warranty period, and (d) Honda denied warranty coverage for the vehicle's service, repairs, and/or replacement parts.

35. The proposed class is sufficiently numerous such that joinder of all members is impractical. Based upon Defendant's own published vehicle sale records, tens of thousands of consumers purchased or leased said vehicles in the State of Illinois during the three-year class period and multiple online forums and widespread media coverage detail Honda vehicle owner complaints relating to wire damage caused by rodent attacks. Honda's own warranty documentation will identify many of the proposed class members, as demonstrated by Preston's and Turgeon's service record codes.

36. There are questions of law and fact common to the class that predominate over any questions affecting only individual class members, especially given Honda's universal denial of any warranty coverage to rodent damage

8

FIRST AMENDED COMPLAINT (CLASS ACTION)

complaints. The principal common issues all relate to Honda's knowledge that the switch to soy or bio-based vehicle components had caused an influx in rodent-related wiring damage, as demonstrated by its marketing, sale and distribution of Honda 4019-2317 Rodent Tape and include, (a) whether Honda omitted and failed to disclose material facts about the class vehicles and their warranty coverage, (b) whether the susceptibility to rodent attacks and resulting wire damage (causing loss of power steering) is a material fact reasonable consumers would have considered in deciding whether to purchase or lease a Honda vehicle, (c) whether Honda's representations and omissions about the defective nature of critical wire coatings, coverings, and/or tubing is violative of Section 2 of the ICFA, and (d) whether Honda committed unfair acts by refusing to repair/replace chewed through wiring at its own cost and/or installing vulnerable wiring components in the first place.

37. Plaintiffs' claims are typical of the claims for all class members, as they arise from the same operative facts and are predicated on the same legal theories.

38. There are no individual questions of fact, other than whether a class member purchased or leased a Honda vehicle and lost power steering due to a rodent attack, which can be determined by a ministerial inspection of Defendant's records, warranty claims, and/or Honda-authorized service center records.

39. Plaintiffs will fairly and adequately protect the interests of the class members, are committed to vigorously prosecuting this matter, and have retained counsel experienced in handling class actions and ICFA claims. Neither Plaintiffs nor their counsel have any interests that might cause them to not vigorously pursue this claim.

40. This action should be maintained as a class action as the prosecution of separate actions by individual class members would create a substantial risk of inconsistent or varying adjudications with respect to individual class members. Furthermore, the prosecution of separate actions could result in adjudications of

individual members' claims that could be dispositive of the interests of other members not parties to the adjudications or could substantially impair and/or impede the ability of such individuals to protect their interests.

41. A class action is a superior method for the fair and efficient adjudication of this controversy. There is interest in the class members to determine a uniform diminished value or reimbursed cost calculation and forcing class members to litigate their claims individually against Honda is economically impracticable.

## COUNT I
## VIOLATIONS OF THE ILLINOIS CONSUMER FRAUD AND DECEPTIVE BUSINESS PRACTICES ACT

42. Plaintiffs reincorporate all preceding paragraphs as if set forth fully in this Count.

43. Section 2 of the ICFA provides:

> Unfair methods of competition and unfair or deceptive acts or practices, including but not limited to the use or employment of any deception fraud, false pretense, false promise, misrepresentation or the concealment, suppression or omission of any material fact, with intent that others rely upon the concealment, suppression or omission of such material fact, or the use or employment of any practice described in Section 2 of the "Uniform Deceptive Trade Practices Act" [815 ILCS 510/2], approved August 5, 1965, in the conduct of any trade or commerce are hereby declared unlawful whether any person has in fact been misled, deceived or damaged thereby. In construing this section consideration shall be given to the interpretations of the Federal Trade Commission and the federal courts relating to Section 5 (a) of the Federal Trade Commission Act [15 U.S.C. § 45].

44. Plaintiffs and all proposed class members are protected by the ICFA in that they are "consumers," defined as, "any person who purchases or contracts for the purchase of merchandise not for resale in the ordinary course of his trade or business but for his use or that of a member of his household." 815 ILCS 505/1e.

10

FIRST AMENDED COMPLAINT (CLASS ACTION)

45. Honda's distribution of the vehicles at issue occurred within the course of Illinois trade or commerce as, "[t]he terms "trade" and "commerce" mean the advertising, offering for sale, sale, or distribution of any services and any property, tangible or intangible, real, personal or mixed, and any other article, commodity, or thing of value wherever situated, and shall include any trade or commerce directly or indirectly affecting the people of this State." 815 ILCS 505/1f.

46. In connection with its distribution of the vehicles at issue, Honda issued written warranties, including a 3-year or 36,000 miles (whichever comes first) new vehicle warranty.

47. Honda intended that Plaintiffs and the proposed class members view their new Honda vehicles as "warranted" as an assurance of quality, designed to induce a vehicle lease or purchase. Honda also generally intended for its purchasers to rely on its assurances of safety, reliability, and warranty coverage.

48. Prior to purchase, Honda approved "window decals" for dealer placement on Honda vehicles. These decals advertised the 3-year/36K warranty term (without specifics as to the warranty's limitations) and listed Honda's electric power steering feature.

49. Honda omitted full disclosure of warranty terms until after purchase. A full warranty booklet is only provided after a lease or purchase transaction is already consummated.

50. Honda omitted telling consumers prior to purchase its warranty is limited to repair or replacement of "parts defective in material and workmanship" and that they would be responsible for their power steering repairs:

11

FIRST AMENDED COMPLAINT (CLASS ACTION)

**New Vehicle Limited Warranty**

**Time and Mileage Period**

This warranty begins on the date the vehicle is put into use in one of the following ways:
- The vehicle is delivered to the first purchaser by a Honda dealer.
- The vehicle is leased.
- The vehicle is used as a demonstrator or company vehicle.

Your vehicle is covered for 3 years or 36,000 miles, whichever comes first. Some parts may have separate coverage under other warranties described in this book.

**Warranty Coverage**

Honda will repair or replace any part that is defective in material or workmanship under normal use. See **Proper Operation** on page 34. All repairs/replacements made under this warranty are free of charge. The replaced or repaired parts are covered only until this New Vehicle Limited Warranty expires.

**This New Vehicle Limited Warranty Does Not Cover:**
- Normal wear or deterioration of any part.
- Cleaning and polishing.
- The adding of any fluids, unless they are needed as part of a warranty repair.
- Broken, chipped, or scratched window glass unless it is due to a defect in material or workmanship.
- Any item concerning your vehicle's general appearance that is not due to a defect in material or workmanship. Cosmetic flaws or minor damage to the body, paint, or other items may occur during manufacture or shipping of your vehicle. If you find any uncorrected flaws or damage on your new vehicle, notify the dealer as soon as possible after delivery.
- Expendable maintenance items (such as filters, or brake pads/linings) when replaced due to normal wear or customer abuse.

**Limited Warranty Coverages**
- Original equipment batteries for key fobs and remotes are covered for the first 6 months of ownership.
- Original equipment wiper blade inserts are covered for the first 6 months of ownership.
- Wheel balancing and wheel alignment are covered for the first year or 12,000 miles, whichever comes first, unless required as part of a warranty repair.
- Air conditioner refrigerant is covered for the first 2 years or 24,000 miles, whichever comes first, unless required as part of a warranty repair.

Your Warranties in Detail   9

51. Honda omitted telling consumers that its use of soy or bio-based products render Honda vehicles particularly susceptible to vehicular damage caused by rodent attacks (whether the chewed wire itself is soy or bio-based is irrelevant because any soy or bio-based component nearby creates the rodent-attractive environment) and that Honda does not consider this a covered event under warranty or a product defect.

52. Honda omitted telling consumers they would be responsible for all of their own costs associated with fixing vehicular damage caused by rodent attacks, even though Honda knew its vehicles' wires and certain gear boxes should be "extra-coated" with rodent-deterrent tape.

53. Within the three years prior to the filing of this action, Honda already knew that its use of soy or bio-based material within vehicles rendered vehicle wiring particularly susceptible to being chewed by rodents because it had begun marketing and distributing Honda 4019-2317 Rodent Tape as a "Genuine Honda Part."

54. When Honda presented its warranty to Plaintiffs and the proposed class members through its duly authorized dealerships, Honda was aware that the material used to cover wiring and/or wire harnesses was susceptible to rodent attacks.

55. In fact, rodent complaints were not isolated incidents but widespread and repeated, enough so that Honda's service technicians were well-versed and able to immediately diagnose the problem.

56. Prior to the sale of the offending vehicles to Plaintiff and the proposed class members, Honda was aware the vehicles were becoming inoperative due to the chewing of wired components.

57. Despite Honda's knowledge as aforesaid, Honda continued to produce its vehicles in a defective state and moreover, continued to refuse to repair or replace the defective materials. Rather, Honda's repair facilities were instructed to advise consumers that the problem was not the result of a defect or a problem with the vehicle's materials and that consumers would have to pay for their own repairs.

58. Even though Honda acknowledged that its vehicle wires and power steering components and/or lines needed to be taped over to dissuade rodents it still, (a) charged and continues to charge consumers for the tape, and/or (b) trains service personnel to replace chewed through parts with parts containing the same vulnerabilities.

59. Despite this obvious defect, and Defendant's representation that defective parts and workmanship would be warranted, Honda knew it did not and would not warrant the problem.

60. Honda vehicles' component vulnerabilities are a material factor in making a purchase or lease decision and the existence of a material defect in a vehicle (which would not be covered under warranty) impacts a consumer's purchase decision.

61. No reasonable consumer would expect a brand-new vehicle to stop functioning because it contains feed for rodents and no reasonable consumer should be expected to bind their vehicle's wires with pepper-flavored tape at his/her own expense.

62. Honda made a company-wide decision to refuse to cover necessary repairs caused by rodent attacks under warranty and acted uniformly with regard to all vehicle owners/lessors.

63. Honda's omissions of material fact are "unfair" under the ICFA because Honda's practice, (a) offends public policy (given that automobile manufacturers are governed by vehicle reliability and safety standards), (b) is immoral, unethical, oppressive, or unscrupulous (since these omissions occur despite years of complaints and vehicle damages), and (c) causes substantial injury to consumers (as Plaintiffs and the proposed class members experienced mechanical and electrical failures that diminished the use and value of their vehicles and required expenditure of out-of-pocket costs).

64. Honda's failure to cover the expense of repair for this known defect has a widespread effect on consumers and implicates general consumer protection concerns. Leasing or purchasing a safe, reliable vehicle that will not break down and will be able to be used for its intended purpose also implicates consumer protection concerns.

65. Honda's unfair conduct – failing to notify consumers that there exists a condition with the vehicle that is not warranted and will require their own out-of-pocket expense to repair, or failure to warrant its defective wire coating/insulation – can and has caused consumers to incur thousands of dollars in repair costs, insurance deductibles or worse, increased premiums, and potentially diminished trade-in or resale value (especially for those with taped wires).

66. But for Honda's unfair acts, Plaintiffs and the proposed class members could have decided to protect their vehicles before a rodent incident, perform research as to rodent-related complaints and select another vehicle, or take additional precautions.

WHEREFORE, pursuant to 815 ILCS 505/10, Plaintiffs respectfully request that judgment be entered against Defendant American Honda Motor Company, Inc., and in favor of Plaintiffs and the proposed class as follows:

    (A)    Injunctive or declaratory relief as appropriate;

    (B)    Actual damages, punitive damages, and reasonable attorney's fees and costs; and

    (C)    All other relief deemed just and appropriate by this Court.

## JURY TRIAL DEMANDED

Respectfully submitted,

By: */s/ Stephanie R. Tatar*
One of Plaintiffs' Attorneys

Stephanie R. Tatar (237792)
Tatar Law Firm, APC
3500 West Olive Avenue, Suite 300
Burbank, California 91505
Tel: (323) 744-1146
Fax: (888) 778-5695
E-mail: stephanie@thetatarlawfirm.com

Larry P. Smith (*pro hac vice* pending) (IL Bar Number 6217162)
SmithMarco, P.C.
55 West Monroe St., Suite 1200
Chicago, IL 60603
Tel: (312) 324-3532
Fax: (888) 418-1277
E-Mail: lsmith@smithmarco.com

Stacy M. Bardo (*pro hac vice* pending) (IL Bar Number 6271913)
Bardo Law, P.C.
22 West Washington St., Suite 1500
Chicago, IL 60602
Tel: (312) 219-6980
Fax: (312) 219-6981
E-mail: stacy@bardolawpc.com