JS-6

UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| MICHAEL PRESTON and PENELOPE TURGEON, individually and on behalf of all others similarly situated, <br><br> Plaintiffs, <br><br> v. <br><br> AMERICAN HONDA MOTOR COMPANY, INC., <br><br> Defendant. | CASE NO. CV 18-38-R <br><br> ORDER GRANTING DEFENDANT'S MOTION TO DISMISS FIRST AMENDED CLASS ACTION COMPLAINT |

Before the Court is Defendant's Motion to Dismiss Plaintiffs' First Amended Class Action Complaint, filed on March 19, 2018. (Dkt. 62). The case was initially filed in the District Court for the Northern District of Illinois but was later transferred here. Having been thoroughly briefed by the parties, this Court took the matter under submission on April 12, 2018.

Rule 12(b)(6) dismissal is proper when a complaint exhibits "the lack of a cognizable legal theory or the absence of sufficient facts alleged under a cognizable legal theory." *Balistreri v. Pacifica Police Dep't*, 901 F.2d 696, 699 (9th Cir. 1988). A plaintiff must allege "enough facts to state a claim to relief that is plausible on its face," so the defendant receives "fair notice of what the…claim is and the grounds upon which it rests." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544,

1  555, 570 (2007).  Courts will not accept "[t]hreadbare recitals of the elements of a cause of action,
2  supported by mere conclusory statements…." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).  Where
3  a plaintiff pleads facts "merely consistent with" a defendant's liability, the plaintiff "stops short of
4  the line between possibility and plausibility of entitlement to relief." *Id.*  When determining
5  plausibility, a court must also consider whether there is an "obvious alternative explanation" for
6  the defendant's conduct. *Id.* at 682.

7   Plaintiff Michael Preston alleges the following.  In June 2015, he leased a 2015 Honda
8  Accord from Muller Honda in Illinois.  In November 2016, well within the new vehicle warranty
9  period, his car lost power steering.  He brought his car back to Muller for repair and was given a
10 repair invoice of $2,146.16.  Muller told Preston that rodents chewed through wiring necessitating
11 replacement of certain power steering parts.  Muller did not cover the repairs under warranty.

12  Plaintiff Penelope Turgeon alleges the following.  In May 2017, she leased a Honda Civic
13 Hatchback at Fletcher Jones Honda in Illinois.  In July 2017, well within the new vehicle warranty
14 period, her car lost power steering.  She brought her car back to Fletcher Jones for service and was
15 told of major damage to her electronic power steering harness caused by rodents that chewed
16 through bare wires.  She received a repair invoice of $313.28.  Fletcher Jones covered the replaced
17 wiring with rodent tape and replaced the power steering sub harness.  Fletcher Jones did not cover
18 the repairs under warranty.  Less than two weeks later, she experienced another loss of power
19 steering and was told her harness needed a second replacement.  Fletcher Jones replaced the part,
20 applied rodent tape, and did not cover the repair under warranty.

21  Plaintiffs bring this putative class action claim under the Illinois Consumer Fraud and
22 Deceptive Business Practices Act ("ICFA").  Plaintiffs claim that all new Hondas purchased or
23 leased from an authorized Illinois dealership between May 2014 and May 2017 are defective
24 because unspecified soy or bio-based components within the cars attract rodents that chew through
25 wires and cause a power steering malfunction.  They claim Defendant knew its cars were
26 particularly susceptible to rodent damage because it marketed and sold special rodent tape but
27 withheld this information from customers.  They claim Defendant omitted telling customers that
28 repairs caused by rodent damage were not warranted.

1        Although the First Amended Complaint ("FAC") is not a model of clarity, it appears Plaintiffs' ICFA claim is based on two separate theories.  The first is that Defendant knew its vehicles—allegedly composed of unspecified soy and bio parts that attract rodents—were defective because power steering wires had to be covered in rodent tape to prevent rodent attacks, but Defendant failed to address or warn customers of the defect.  (*See* FAC ¶¶ 36, 51-53, 56-57, 59).  The second is that Defendant misrepresented the scope of the warranty by hiding the limits of the warranty from customers until after purchase.  (*See* FAC ¶¶ 36, 46-49, 65).

        Defendant argues the FAC must be dismissed for failure to provide fair notice of Plaintiffs' claim under Rule 8.  This Court agrees that Plaintiffs' first theory of liability—dependent on whether the vehicles are defective—violates Rule 8.  Plaintiffs do not allege which, if any, power-steering components are soy or bio-based, leaving Defendant without guidance to investigate the alleged defects.  Plaintiffs also do not provide factual support for their bald assertion that soy or bio components attract rodents.  (*See* FAC ¶ 51).  Moreover, while Plaintiffs purport to limit their claim to power steering components, the allegations demonstrate otherwise.  Specifically, Plaintiffs allege that "whether the chewed wire itself is soy or bio-based is irrelevant because any soy or bio-based component nearby creates the rodent-attractive environment."  (FAC ¶ 51).  Plaintiffs do not specify what they mean by "nearby," potentially placing all components within the entire engine compartment at issue.  Like this Court said in *McKown*, the amount of components and parts in a vehicle is exceedingly large, and that number grows when considering every model produced over a span of three years.  *McKown v. Am. Honda Motor Co., Inc.*, 2017 WL 4786086, at * 2 (C.D. Cal. July 11, 2017).  Without guidance relating to the location and scope of the alleged defect, Defendant will struggle to craft a meaningful response to Plaintiffs' claim.

        Although Plaintiffs argue in opposition that *McKown* is materially different because Plaintiffs here limit their claims to the power steering box, Plaintiffs' allegations are just as expansive as the allegations in *McKown*.  While the *damaged* parts may be limited to the power steering box, the *defective* parts—the soy or bio-based components that allegedly attract the rodents—may be anywhere in the engine based on Plaintiffs' allegations.  *But see Hardt v.*

*Chrysler Group LLC*, 2015 WL 12683965, at * 5 (C.D. Cal. June 15, 2015) (alleging which parts were damaged was sufficient where damaged parts were themselves defective).

Plaintiffs appear to shift gears, arguing that "[t]he critical question is not which parts were soy or bio-based but whether the parts that Plaintiffs had to pay to replace in their vehicles were defective because they first had to be covered in rodent tape to withstand normal daily use." In other words, Plaintiffs argue that the damaged wires themselves are defective simply because rodents enjoy chewing on them, even if the wires do not attract rodents. The Court rejects this argument. Properly functioning wires are not rendered defective simply because rodents enjoy chewing on them. That rodent tape serves as a deterrent does not mean the wires are defective unless wrapped in tape.

Similarly, it is implausible that Defendant's use of rodent tape serves as an admission that its vehicles are defective, i.e. *particularly* attractive to rodents, and its wires are unfit for daily use. (FAC ¶ 8). Apart from the unwarranted logical leap such an allegation requires, an obvious alternative explanation is good customer service, that Defendant identified a problem—rodents chew on vehicle wires—and crafted a solution—rodent tape. *Heber v. Toyota Motor Sales U.S.A., Inc.*, 2017 WL 5642312, at *2 (C.D. Cal. Sept. 20, 2017) (allegations that soy components attract rats implausible where "obvious alternative explanation" was natural tendency for rats to go where unwanted). Accordingly, Plaintiffs do not provide fair notice of any purported defect, and Plaintiffs' first theory of liability under the ICFA fails.

Plaintiffs' second theory of liability under the ICFA is based on whether Defendant misrepresented the scope of the warranty. Plaintiffs allege that Defendant advertised a 3-year/36,000-mile warranty that covered power steering malfunctions but did not tell customers that rodent damage to power steering components would not be covered.[1]

---

[1] It is not clear whether Plaintiffs claim Defendant breached the express warranty by failing to cover rodent damage. Although Plaintiffs do not specifically bring a claim for breach of warranty, their allegations suggest as much. (*See* FAC ¶ 59). Defendant's warranty booklet, a proper subject of judicial notice, specifies that the warranty covers only defects in "materials and workmanship." First, as explained, Plaintiffs fail to allege any facts suggesting the vehicles are defective. Second, any such defects are *design* defects which do not fall under defective materials or workmanship. *See, e.g.*, *Gertz v. Toyota Motor Corp.*, 2011 WL 3681647, at *3 (C.D. Cal. Aug. 22, 2011).

4

1     The ICFA makes actionable unfair or deceptive business practices. *Martis v. Pekin Memorial Hosp. Inc.*, 395 Ill. App. 3d 943, 949 (Ill. App. Ct. 2009). "A deceptive practices claim must meet Rule 9(b)'s heightened pleading standard, while an unfair practices claim need not because it is not based on fraud." *Wheeler v. Assurant Specialty Property*, 125 F. Supp. 3d 834, 842 (N.D. Ill. 2015).

Plaintiffs allege that Defendant's conduct was unfair and deceptive. (*See* FAC ¶¶ 11, 63, 65, 66). Nevertheless, Plaintiffs argue that their claim is based only on unfair practices. Although Plaintiffs repeatedly use the word "unfair," it is clear that their claim is predicated on deception, that Defendant allegedly knew about the rodent problem and misled customers into believing related repairs would be warranted. *See, e.g.*, *Camasta v. Jos. A. Bank Clothiers, Inc.,* 761 F.3d 732, 737 (7th Cir. 2014) ("Simply adding language of 'unfairness' instead of 'misrepresentation' does not alter the fact that Camasta's allegations are entirely grounded in fraud under the ICFA."). Accordingly, Plaintiffs' claim must meet the heightened Rule 9(b) pleading requirements.

To maintain a deceptive omission claim under the ICFA, the plaintiffs must first allege a communication containing the deceptive omission. *Schwebe v. AGC Flat Glass N.A., Inc.*, 2013 WL 2151551, at *2 (N.D. Ill. May 16, 2013). Second, the plaintiffs must allege that the defendant intended the plaintiffs to rely on the deceptive omission. *Minter v. Diamond*, 2017 WL 1862639, at *6 (N.D. Ill. May 9, 2017). Third, there must be a causal link between the deceptive omission and the harm. *Martis*, 395 Ill. App. 3d at 949.

The pre-sale communications at issue are Defendant's "Monroney stickers" that allegedly promote a 3-year/36,000-mile warranty purporting to cover power steering malfunctions. These stickers allegedly omit the limits of the warranty—including that damage caused by rodents is not warranted—which are not revealed until customers receive a warranty booklet after purchase.

It is not clear that the federally mandated Monroney stickers count as a communication for purposes of the ICFA or that Defendant is permitted to include the fine print on the stickers. In any case, Plaintiffs fatally do not allege that they read or relied on the Monroney stickers or any other pre-sale communication before purchasing their vehicles.[2] Therefore, there is no causal link

---

[2] Plaintiffs argue they allege reliance on unspecified product advertisements in the original complaint. (Opposition at 17). They do not allege reliance on any pre-sale communications in the FAC.

5

between the allegedly deceptive omission and the harm, and Plaintiffs' second theory of liability under the ICFA fails.

**IT IS HEREBY ORDERED** that Defendant's Motion to Dismiss Plaintiffs' First Amended Class Action Complaint is GRANTED.

Dated: May 24, 2018.

_____
MANUEL L. REAL
UNITED STATES DISTRICT JUDGE